

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5879 | **DATE** | 9/9/2003 |
| **CASE TITLE** | GARNIE HEAD vs. NORTH PIER APARTMENT TOWER | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court grants defendant's motion to dismiss Count I pursuant to Fed.R.Civ.P. 12(b)(6) [6-1]. Pursuant to 28 U.S.C. Section 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Counts II and III and dismisses those counts without prejudice. This case is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | | |
| | No notices required. | | | | | |
| | Notices mailed by judge's staff. | | | SEP 1 2 2003 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | | 11 |
| | Copy to judge/magistrate judge. | | | | | |
| CG | courtroom deputy's initials | | | date mailed notice | | |
| | | | | mailing deputy initials | | |
| | | Date/time received in central Clerk's Office | | | | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GARNIE HEAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ronald Guzmán |
| | ) | |
| NORTH PIER APARTMENT TOWER, | ) | 02 C 5879 |
| a/k/a/ BROADACRE MANAGEMENT, | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED**

SEP 12 2003

## MEMORANDUM OPINION AND ORDER

Pending is defendant North Pier Apartment Tower's motion to dismiss the complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) and 12(b)(1) and 28 U.S.C. § 1367(c). For the reasons set forth below, the Court grants the motion.

## FACTS

For purposes of this motion, the Court takes the facts alleged in the complaint as true. Plaintiff applied for an apartment owned and managed by defendant on August 9, 2000. Defendant informed plaintiff that he had been approved for the lease of Unit 1905 at North Pier Apartment Tower at 474 North Lake Shore Drive in Chicago, Illinois, on August 20, 2000. Pursuant to the agreement plaintiff paid $2,340 as a security deposit and further promised to pay $2,340 for the first month's rent before moving into the premises. Plaintiff received a receipt for his security deposit, and defendant informed plaintiff that he would be able to move into Unit 1905 on August 29, 2000. On August 28, 2000, plaintiff went to North Pier Apartment Tower, where he signed the lease and paid two months rent totaling $4,680. Defendant's agent informed plaintiff that he could pick up his apartment keys and move in at 4:00 pm the following day. On

August 29, 2000, defendant refused to deliver possession of the apartment to plaintiff.

In Count I of his complaint, plaintiff alleges that defendant failed to notify him in writing that his application for credit had been denied in violation of section 1691(d) of the Equal Credit Opportunity Act ("ECOA"). In Count II of his complaint, plaintiff alleges that defendant violated the City of Chicago Landlord and Tenant Ordinance, Municipal Code 5-12-110(b), in failing to deliver possession of the apartment. In Count III of his complaint, plaintiff alleges that defendant violated the Illinois Consumer Fraud and Deceptive Practices Act in that defendant's statement to plaintiff that he would receive the keys to the unit and could move in on August 29, 2000 was a misrepresentation.

## DISCUSSION

Defendant moves to dismiss all three counts of plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). Defendant contends that Count I of the complaint fails to state a claim under the ECOA. Defendant further contends that supplemental jurisdiction over Counts II and III of the complaint should be declined pursuant to 28 U.S.C. § 1367(c).

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "all factual allegations in the complaint" are accepted as true, and all reasonable inferences from the facts are weighed in plaintiff's favor. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). The complaint will be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In addition, the Court will construe the complaint liberally and will view the allegations in a light most favorable to the non-moving party. *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). However, facts alleged in the complaint which undermine plaintiff's

2

claim will not be ignored. *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir. 1988).

## I. Count I

Plaintiff first argues that defendant North Pier "willfully violated" the ECOA, in particular 15 U.S.C. § 1691(d), by failing to notify him in writing that his application for credit had been denied. Defendant disagrees and argues that plaintiff was not extended "credit" under the ECOA, that defendant was not a "creditor" under the ECOA, and that plaintiff was not a credit "applicant" under the ECOA.

The ECOA imposes duties on creditors to avoid certain types of discrimination and requires a creditor to provide a credit applicant with a statement of reasons as to why unfavorable action has been taken on a credit application. 15 U.S.C. § 1691(a); *id.* § 1691(d). Here, however, it is defendant's position, and the Court agrees, that the ECOA does not apply to this case

The ECOA defines credit as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefore." 15 U.S.C. § 1691a(d). The term "creditor" is defined by the ECOA as "any person who regularly extends, renews, or continues credit." 15 U.S.C. § 1691a(e). Finally, the ECOA defines credit "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). In reading these definitions together, it is clear that the ECOA extends only to instances in which the right to defer payment of an obligation is granted. *Shaumyan v. Sidetex Co., Inc.*, 900 F.2d 16, 18 (2nd Cir. 1990). Absent a right to defer payment for a monetary debt,

3

property, or services, the ECOA is inapplicable. *Id.*

Here, plaintiff had paid one month's rent and another month's rent as a security deposit. When plaintiff signed the lease with defendant, there certainly was never any credit extended to plaintiff. In signing the lease, plaintiff did not obtain a right to defer any payment, and defendant was not capable of extending credit. As a potential landlord of apartments, defendant is not in the business of "regularly extending, renewing, or continuing credit." *See* 15 U.S.C. § 1691a(e). Rather, defendant is in the business of renting out apartment units. Similarly, plaintiff is not an "applicant." Plaintiff applied with defendant for an apartment; plaintiff was not applying-directly or indirectly-to a creditor for an extension, renewal, or continuation of credit. Plaintiff was merely applying for an apartment lease with defendant. Plaintiff fails to state an ECOA claim because he is not an applicant, defendant is not a creditor, and no credit was extended.

Plaintiff relies extensively on *Brothers v. First Leasing*, 724 F.2d 789 (9th Cir. 1984), which involved a consumer lease for an automobile. There, the plaintiff claimed that her application for an automobile lease had been denied on the basis of sex or marital status in violation of the Equal Credit Opportunity Act. *Id.* at 791. However, that case is readily distinguished from the case at bar.

In *Brothers*, the plaintiff's lease for an automobile was entitled "Application for Lease Credit," which, as defendant points out in its brief, "indicates on its face that it is an application for credit." *Id.* at 790. Here, plaintiff merely signed a lease to rent an apartment from defendant; plaintiff did not enter into any form of credit transaction. Although plaintiff contends that the lease in *Brothers* was similar to his apartment lease in that both leases obligate the lessee to pay the entire amount of the lease, there are several situations in which plaintiff would not have to

4

pay the entire amount of his lease. The lease at issue allowed for the opportunity to sublet the apartment to a third party, which would relieve plaintiff of his payment obligation (Pl.'s Ex. A, ¶ 10.) Further, if plaintiff as a tenant were to vacate his apartment before the lease had expired, defendant would be required actively to seek another prospective tenant in an attempt to mitigate plaintiff's remaining rent obligations. Chicago Mun. Code ch. 5-12-120. Most convincing, however, is the fact that plaintiff's rental obligation demanded a monthly payment of $2,340 in exchange for use of the apartment.

Where the leasing agreement provides for the lessee to make incremental payments as contemporaneous exchange of consideration for possession of the leased goods, the lessee cannot be said to "defer payment of debt," and the lease will not be regarded as a "credit transaction," within meaning of the ECOA. *Liberty Leasing Co. v. Machamer*, 6 F. Supp. 2d 714, 717 (S.D. Ohio 1998). In *Liberty Leasing Co. v. Machamer*, the lessees were obligated to make rent payments in exchange for the quiet use and enjoyment of the equipment they were leasing. *Id.* Moreover, the lessees were never obligated to pay the full amount of the lease under the agreement. *Id.* The lease provided that upon the lessees' default, the lessor had the right to lease the equipment to another party in an attempt to mitigate damages, thus relieving the original lessees from the entire obligation of the lease. *Id.* The court held that the lessees did not incur a debt for which payment was deferred because the lessee's surrender of possession of the equipment would have released the lessees of their debt for the full lease amount. *Id.* In rejecting the *Brothers* ruling that a lease obligation is credit as defined in the ECOA, the *Liberty* court found that when remedial scenarios exist where the lessee's financial obligation can be extinguished upon surrender of possession, the transaction cannot be classified as credit. *Id.* at 718.

5

The contemporaneous exchange of consideration in *Liberty* is likewise existent in the case at bar. Here, there was never any deferral of a debt payment since plaintiff had to pay his rent each month in exchange for occupying the apartment. Moreover, plaintiff was not required to pay the lease's entire amount because he would have been able to sublease the apartment and therefore not pay the full amount of the lease. In its reply to plaintiff's response, defendant points to the position taken by the 1985 Final Official Staff Interpretation issued by the Board of Governors for the Federal Reserve, which was responsible for promulgating the ECOA regulations. The Interpretation stated resoundingly that leases should not be considered under the ECOA. 50 F.R. 48018. The Board reasoned that if Congress wanted to include leases under the ECOA, it would have explicitly done so in the language of the statute; the Board also refused to adopt the broad definition of credit in *Brothers*. 50 F.R. 48019-20; 50 F.R. 48018, 28019-20.

Plaintiff's contention in his reply brief that defendant violated the Fair Credit Reporting Act (FCRA) when defendant pulled plaintiff's credit report is unfounded. Although plaintiff relies on Exhibit B, which is a notification that plaintiff's credit report had been reviewed, Exhibit C clearly establishes that defendant did not violate the FCRA. In Exhibit C, plaintiff's signature appears at the bottom of the application, which almost directly above reads: "The application hereby authorizes [defendant] to make any investigations as to credit . . . ." (Pl.'s Reply, Ex. C, ¶ 14.) The FCRA allows the use of such a report as a form of tenant screening as long as the plaintiff gives permission to its use. 15 U.S.C. § 1681(b)(a)(2). Thus, plaintiff clearly gave his permission to defendant for such use, and defendant did not violate the FCRA.

The Court finds that because plaintiff was not extended credit, defendant was not a creditor, and the apartment lease was not an extension of credit, Count I of the complaint is dismissed for failure to state a claim upon which relief can be granted.

6

## II. Counts II and III

Plaintiff has invoked the supplemental jurisdiction of the Court with regard to Counts II and III of the complaint pursuant to 28 U.S.C. § 1367(a). Plaintiff contends in Count II that defendant violated Chicago Municipal Code § 5-12-110(b)(2) when it failed to deliver possession of the apartment. Plaintiff contends in Count III that defendant violated the Illinois Consumer Fraud and Deceptive Practices Act because he alleges defendant's statement that plaintiff would receive the apartment keys and could move in was a misrepresentation.

In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action so that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). A district court's decision to relinquish pendent jurisdiction before the federal claims have been tried is the norm, not the exception, and such a decision will be reversed only in extraordinary circumstances. *Miller Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001). "It is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).

Here, as discussed above, the Court dismisses plaintiff's only claim over which it has original jurisdiction. Based on the circumstances and facts of this case, the Court declines to exercise supplemental jurisdiction over Counts II and III of the complaint and dismisses those counts without prejudice.

7

## CONCLUSION

For the reasons set forth above, the Court grants defendant's motion to dismiss Count I

pursuant to Fed. R. Civ. P. 12(b)(6) [doc. no. 6-1]. Pursuant to 28 U.S.C. § 1367(c)(3), the Court

declines to exercise supplemental jurisdiction over Counts II and III and dismisses those counts

without prejudice. This case is hereby terminated.

**SO ORDERED**                             ENTER: *September 9, 2003*


HON. RONALD A. GUZMAN
**United States Judge**

8